Mike Arias, Esq. (SBN 115385)
mike@aswtlawyers.com
Arnold C. Wang, Esq. (SBN 204431)
arnold@aswtlawyers.com
M. Anthony Jenkins, Esq. (SBN 171958)
anthony@aswtlawyers.com
**ARIAS SANGUINETTI WANG & TEAM LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile:  (310) 861-0168

[Additional Counsel on Next Page]

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD EIGENBERG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USA WASTE OF CALIFORNIA, INC., d/b/a WASTE MANAGEMENT,<br><br>Defendant. | Case No. 5:24-cv-00490-SVW-SHK<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>HONORABLE STEPHEN V. WILSON<br><br>Motion Date: October 27, 2025<br><br>Motion Time: 1:30 p.m. |

*ARIAS SANGUINETTI WANG & TEAM LLP*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Steven D. Liddle, Esq.*
sliddle@lsccounsel.com
Laura L. Sheets, Esq.*
lsheets@lsccounsel.com
Matthew Z. Robb, Esq.*
mrobb@lsccounsel.com
**LIDDLE SHEETS P.C.**
*Appearing *Pro Hac Vice*
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025

*Attorneys for Plaintiff and the Putative Class*

**ARIAS SANGUINETTI WANG & TEAM LLP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARIAS SANGUINETTI WANG & TEAM LLP**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ……………………………………………………....    1

FACTUAL BACKGROUND…………………………………………....    3

    A.    Discovery Efforts and Facts Relevant to Plaintiff's Claims………...    4

    B.    Material Terms of the Settlement Agreement………………………    5

    C.    Notice Program……………………………………..……………    6

    D.    Timeline and Procedures for Claims, Opt-Outs, and Objections……    7

    E.    Settlement Administration…………………………………………..    8

    F.    Proposed Distribution Plan………………………………………    10

LEGAL STANDARD………………………………………………..    11

ARGUMENT……………………………………………………………    12

    I.    The Settlement Is Entitled to a Presumption of Fairness
        Because It Resulted from Adversarial Litigation and
        Negotiation by Experienced Counsel…………………………    12

    II.    The *Hanlon* Factors Weigh Overwhelmingly in
        Favor of Settlement…………………………………………    12

    A.    The Strength of Plaintiff's Case Counsels in Favor of
        Settlement…………………………………………………    14

    B.    The Risk, Expense, Complexity, and Likely Duration of Protracted
        and Complex Litigation Supports Settlement………………………    16

    C.    The Risk of Maintaining a Class Action through
        Trial is High…………………………………………………    18

    D.    The Amount Offered in Settlement Is Fair……………………    19

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

ARIAS SANGUINETTI WANG & TEAM LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.   Plaintiff's Extensive Pre-Suit Investigation and Discovery
     Efforts Were More than Adequate to Inform Experienced
     Counsel Prior to Mediation and Settlement……………………………   21

F.   The Experienced Views of Class Counsel Resoundingly Support
     Settlement on the Agreed-Upon Terms……………………………...   22

     III.   Class Certification Is Unopposed and Appropriate for
            Settlement Purposes……………………………………………...   22

A.   The Settlement Class is Sufficiently Numerous………………………..   23

B.   The Settlement Class Shares Overwhelmingly Common Questions
     of Law and Fact…………………………………………………………...   23

C.   The Claims of the named Plaintiff are Typical of the
     Class's Claims……………………...……………………………...........   24

D.   The Named Plaintiff and Class Counsel will Continue to Fairly
     and Adequately Protect the Class's Interests…………………………...   25

E.   Common Questions of Law and Fact Predominate over Any
     Questions Affecting Only Individual Members……………………….   26

     IV.   The Notice Plan Set Forth in the Settlement
           Agreement is Appropriate……………………………………...   28

CONCLUSION……………………………………………………………   29

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231 (1997) ...................................................................26

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ...............................................................................24

*Bayat v. Bank of the W.*,
   2015 WL 1744342 (N.D.Cal. Apr. 15, 2015) .........................................................16

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ...........................................................................21

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ...............................................................................11

*Ching v. Siemens Indus., Inc.*,
   2014 WL 2926210 (N.D.Cal. June 27, 2014) .........................................................16

*Cook v. Rockwell Int'l Corp.*,
   151 F.R.D. 378 (D. Colo. 1993) .............................................................................27

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156, 94 S. Ct. 2140 (1974) ......................................................................29

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011).................................................................................23

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
   446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) ...........................................23

*Grace v. Apple, Inc.*,
   328 F.R.D. 320 (N.D. Cal. 2018) ...........................................................................25

ARIAS SANGUINETTI WANG & TEAM LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARIAS SANGUINETTI WANG & TEAM LLP

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)...................................................................11

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................24

*In re Bluetooth Headset Prod.'s Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011)..............................................................12, 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
   273 F.R.D. 586 (C.D. Cal. 2009).............................................................24

*In re Linkedin User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ..............................................14, 15, 17, 19

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions*
   *Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014)..............................................................13

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ....................................................................11

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..........................................................14, 21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)..........................................................12, 19

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998).............................................................27

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................12

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008)..............................................................24

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ...................................................................24

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**ARIAS SANGUINETTI WANG & TEAM LLP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Qualls v. Smyth*,

    148 Cal. App. 2d 635, 307 P.2d 29 (1957) ............................................................ 19

*Rannis v. Recchia*,

    380 F. App'x 646 (9th Cir. 2010) .......................................................................... 23

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ................................................................................ 25

*Wade v. Campbell*,

    200 Cal. App. 2d 54, 19 Cal. Rptr. 173 (1962) ................................................... 19

*Wolin v. Jaguar Land Rover N. Am., LLC*,

    617 F.3d 1168 (9th Cir. 2010) .............................................................................. 23

## <u>Rules</u>

Fed. R. Civ. P. 23 ......................................................................................... 7, 22, 29

Fed. R. Civ. P. 23(a) ............................................................................................. 22

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................... 28

Fed. R. Civ. P. 23(e) ............................................................................................... 3

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................... 11

Fed. R. Civ. P. 23(e)(1)(B) .............................................................................. 11, 28

Rule 23(a)(2) .................................................................................................. 23, 24

Rule 23(b)(3) .......................................................................................................... 26

Rule 23(e)(2); and (ii) ............................................................................................ 11

**INTRODUCTION**

On March 5, 2024, Plaintiff brought this proposed class action against Defendant USA Waste of California, Inc. ("WM" or Defendant"), the owner-operator of the El Sobrante Landfill located in Corona, California (the "Landfill"). Plaintiff alleges that Defendant has released widespread nuisance odors into his private residential property, and the properties of similarly situated residential neighbors within 2.5 miles of the Landfill ("Class Area"). Plaintiff alleges common law claims of public nuisance, private nuisance, and negligence. Plaintiff alleges property damages only, including for lost use and enjoyment of property and adverse impacts on property values. Plaintiff does not claim any personal injuries associated with Defendant's alleged odor emissions.

This case has been vigorously litigated by highly experienced counsel since the complaint was filed. On May 2, 2024, Defendant moved to dismiss Plaintiff's claims and strike the class allegations in the complaint. (Doc. 36). Plaintiff's Counsel successfully opposed Defendant's dispositive motion, following an in-person hearing. (Doc. 45). In connection with the denial of Defendant's dispositive motion, the Court entered an expedited scheduling order, permitting class certification related discovery through November 29, 2024. (Doc. 44).

During class certification discovery, the Parties engaged in settlement discussions and agreed to propose staying the case to allow for mediation. (Doc. 47;

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

ARIAS SANGUINETTI WANG & TEAM LLP

Doc. 48). Prior to mediation, the Parties engaged in discovery, which involved production and review of more than 1,500 documents produced by Defendant. On October 16, 2024, the Parties attended a full-day, in-person mediation with experienced neutral Michelle Yoshida with Phillips ADR. Prior to mediation, the Parties fully briefed their respective positions and held conferences with the mediator in advance to stake out their respective positions. The mediation was hard fought, adversarial, and ultimately successful. (Doc. 49).

During the ensuing months after an agreement in principle was reached, Counsel for the Parties exchanged multiple drafts and edits of the Settlement Agreement and the incorporated exhibits. Plaintiff is pleased to present the Court with a fully executed proposed class action Settlement Agreement, which is attached hereto as **Exhibit 1**.

The proposed Settlement Agreement is valued at $1.69 million. If approved, the Settlement Agreement will require Defendant to pay $1,000,000 into a cash fund for the benefit of Class Members and to perform Landfill Improvement Measures valued at approximately $690,000 within two years of the Effective Date. (**Ex. 1**, SA, pg. 15, Sec. 5(a); pg. 19, Sec. 7(a)). The Landfill Improvement Measures are to be invested in odor misting systems "designed to reduce odor emissions from the landfill." (**Ex. 1**, SA, pg. 19, Sec. 7(a)).

ARIAS SANGUINETTI WANG & TEAM LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's Counsel's extensive pre-suit investigation, discovery efforts, and experience in similar cases, in addition to prior litigation involving the same defense counsel, provided the Parties with a sufficient factual and legal basis to adequately value the case and to be well informed regarding the likelihood of prevailing on issues of class certification, merits, and damages prior to mediation and settlement.

Plaintiff now moves for preliminary approval of the Settlement pursuant to Fed. R. Civ. P. 23(e). For the following reasons, Plaintiff respectfully requests that the Court grant preliminary approval and conditionally certify the proposed Class so that notice may be disseminated to the Class and the reaction of the Class received in advance of a Final Fairness Hearing to be set by the Court.

**FACTUAL BACKGROUND**

Through the Complaint, Plaintiff alleged nuisance odor impacts from the Landfill spanning 2.5 miles. The initial proposed class area was defined as: "All owner/occupants and renters of residential property residing within two-and-one-half (2.5) miles of the Landfill's property boundary between the date three (3) years predating the filing of this Complaint and the present." (Doc. 1, Pg.ID.8). The proposed Settlement Agreement stipulates to a "Class," "Class Area," and "Class Period" that are the same as alleged through the Complaint. (**Ex. 1**, SA, Pg. 5, Secs.

2(b), 2(d)). A Class Area Map delineating class membership is incorporated into the Settlement Agreement and attached as **Exhibit 1(A)** ("Class Area Map").[1]

**A. Discovery Efforts and Facts Relevant to Plaintiff's Claims.**

Plaintiff's claims and the proposed Class Area were based upon an extensive pre-suit investigation by Plaintiff's Counsel, which revealed reports of noxious odors at the properties of more than 35 residents, multiple Notices of Violation (NOVs) issued to Defendant by the South Coast Air Quality Management District (SCAQMD),[2] more than 100 odor complaints submitted by local residents to the SCAQMD, numerous odor reports documented on social media, and the development of a El Sobrante Landfill Citizens Oversight Committee. (**Ex. 2**, ¶41).

During litigation, Plaintiff's Counsel's investigation remained ongoing and the Parties exchanged targeted discovery requests seeking information necessary to conduct a fruitful mediation. (**Ex. 2**, ¶36). Plaintiff's investigation revealed that Defendant had sought a petition for variance from the SCAQMD because of documented exceedances of sulfuric emissions, which is indicative of off-site odors. Plaintiff also obtained more than 1,500 pages of documents from Defendant. (**Ex. 2**,

[1] The Class Period means the period of time between and including March 5, 2021 through the Effective Date.

[2] The SCAQMD issued violations to Defendant on multiple occasions during the Class Period, including without limitation, January 4, 2023, June 2, 2023, June 21, 2023, June 26, 2023, and March 28, 2024.

ARIAS SANGUINETTI WANG & TEAM LLP

¶41). The documentation exchanged by Defendant in advance of mediation also included statements from putative class members who reported *not* being disturbed by odors at their properties, in addition to two expert reports which raised doubts regarding the extent, severity, and/or commonality of odor emissions into the Class Area. (**Ex. 2**, ¶42). In sum, the Parties were more than adequately equipped with the information necessary to weigh the respective values, costs, and risks of protracted litigation prior to engaging in mediation.

### B.    Material Terms of the Settlement Agreement.

The Total Settlement Value for the Class is $1.69 million and "consists of payment $1 million in cash and additional WM agreements to expend approximately $690,000 in improvement measures during the next two years from the Effective Date on misting systems designed to reduce odor emissions from the landfill." (**Ex. 1**, SA, pg. 9, Sec. 2(y)). These terms squarely achieve the two primary goals of this litigation: (1) compensating residents for past nuisance damages; and (2) improving Landfill operations to reduce odor emissions moving forward.

In exchange for this meaningful relief, Defendant would obtain a classwide release of claims from the Class "concerning the Landfill, either individually, or as a member of a class, against the Released Parties, for, based on, by reason of, or arising from the conduct alleged in Plaintiff's Complaint[.]" (**Ex. 1**, SA, pg. 8, Sec. 2(u)). Importantly, the Settlement preserves all past, present, and future claims for

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

medical harm or personal injuries, future claims of any kind occurring after the Effective Date, and claims to enforce the terms of the Settlement. (***Id.***)

As consideration for the $690,000 in Landfill Improvement Measures, the Parties have agreed to a "Cooling-Off Period" under which no Class Member may initiate a new action against the WM Releasees for twenty-four (24) months from the Effective Date. (**Ex. 1**, SA, pg. 8, Sec. 2(u)). This Cooling Off Period is designed to permit Defendant adequate time to implement the Landfill Improvement Measures prior to facing new litigation. However, "claims may accrue during that time" and "[a]ny claims that may accrue during that time are not released under this Settlement Agreement[.]" (**Ex. 1**, SA, pg. 19, Sec. 7(c)).

### C.    Notice Program.

The proposed notice program includes direct mail notice to all known residential addresses within the Class Area via First Class U.S. Mail (**Ex. 1(D)**), publication notice in a newspaper of general circulation within the Class Area (**Ex. 1(F)**), and development of a designated settlement website to be hosted by Class Counsel.[3]

The longform Class Notice describes the terms of the Settlement and Class Members' rights in plain, easy to understand language. The Class Notice and Claim

---

[3] Should preliminary approval be granted, the Settlement Website will be hosted at: www.LSCCounsel.com/elsobrantesettlement. The Settlement Website will contain settlement-related documents, including copies of the Complaint, Settlement Agreement, Claim Form, Class Notice, and the Preliminary Approval Order.

Form (**Ex. 1(E)**) will be provided to all known residential addresses within the Class

Area via First Class U.S. Mail. (**Ex. 2**, ¶22). Based on U.S. Census data obtained by

Class Counsel, there are 5,864 households in the Class Area, each of which will

receive direct mail notice. (**Ex. 2**, ¶23).

### D.    Timeline and Procedures for Claims, Opt-Outs, and Objections.

If preliminary approval is granted, the Class Notice and a copy of the Claim

Form (**Ex. 1(E)**) will be mailed out within 28 days of the Court's preliminary

approval order. (**Ex. 1(C)**).

The Settlement Agreement provides for a claims process, by which Class

Members can submit a simple claim form to receive their share of the Settlement

fund. To receive compensation from the $1 million Settlement Fund, Class Members

will be required to submit a Claim Form within 60 days of the mail date. (**Ex. 1**, SA,

pg. 17, Sec. 6). To be valid, claims must indicate a valid address located in whole or

in part within the Class Area, and claimants must provide basic information, such as

a driver's license and/or utility bill, identifying their identity and a valid property

interest during the Class Period (on or after March 5, 2021). (**Ex. 1(E)**).

Pursuant to Fed. R. Civ. P. 23, Class Members will be afforded the opportunity

to opt out or object to the Settlement Agreement within 45 days of the mail date.

(**Ex. 1**, SA, pg. 17, Sec. 6). The Class Notice clearly instructs Class Members

regarding the simple procedures for submitting opt outs and objections, including

ARIAS SANGUINETTI WANG & TEAM LLP

the information that should be included in any opt out or objection. (**Ex. 1(D)**, ¶¶15, 21). Copies of any opt outs or objections that are received will be submitted to the Court in connection with Plaintiff's Motion for Final Approval, to be considered by the Court at a Final Fairness Hearing.

### E.    Settlement Administration.

Class Counsel at Liddle Sheets P.C. ("LSPC") is offering to act as Settlement Administrator in this case to provide decades of experience, professionalism, direct knowledge and support, and significant savings to the Class. LSPC has vast experience litigating and administering settlements in cases of this type and has acted as settlement administrator in many dozens of similar cases. (**Ex. 2**, ¶7-8, 14). One would be hard pressed to find a firm nationwide with more experience in settlement administration of neighborhood class actions than LSPC and its staff.

In almost all of the cases listed on the Declaration of Steven D. Liddle, LSPC "provided Notice and administered the settlement." (**Ex. 2**, ¶16). To perform this task, LSPC has "invested tens of thousands of dollars in the equipment necessary to mail thousands of letters in a single day." (***Id.***) LSPC also has designated settlement administration staff, including Katie Oullette, whose role at the firm is devoted to administering class settlements. (***Id.***) In the administration of these similar class actions, LSPC has never been investigated or even accused of fraud, nor has there

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

ever been a grievance sustained or even investigated regarding our settlement administration. (**Ex. 2**, ¶17).

In the past, LS has utilized several professional settlement administrators for larger cases. "While these services have worked well when dealing with cases involving tens of thousands of claimants, we have found that they are cost prohibitive, and not as effective, when dealing with a neighborhood class involving only several hundred or thousand claimants, such as the present case." (**Ex. 2**, ¶18).

For example, in another recent California case, Plaintiffs' Counsel requested a quote from an outside administrator, which offered to provide the same services that LSPC offers here for $51,600. (**Ex. 2**, ¶19; **Ex. 2(A)**, Kroll Administration Quote). LSPC successfully administered the settlement for approximately $10,000. (***Id.***) That case involved a similarly sized class (4,500+), and the costs of settlement administration in this case involving a class of approximately 5,864 households will likely be slightly higher but similar. (**Ex. 2**, ¶61).

To ensure data security, LSPC employs a professional IT company to continuously monitor the security of its network. LSPC's data security system has multiple layers of data protection. (**Ex. 2(B)**, Siwicki Decl.).[4] The LSPC system is protected by multiple active deterrents for data breaches, and LS employs a system

---

[4] Plaintiff provides the Court with a declaration that was offered in another recent California case, which summarizes the IT services and data protection at the firm.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

that actively monitors for data breaches, malware, and other hacking efforts. In more than two decades of administering similar class action settlements, no class member data has ever been compromised. (**Ex. 2**, ¶20). LSPC's insurance policy covers cyber liability, in addition to client claims for misuse of funds by the firm. (**Ex. 2**, ¶20). Further, Class Members maintain all rights they otherwise may have against the Settlement Administrator. (**Ex. 1**, Sec. 5(a)(vi)).

### F. Proposed Distribution Plan.

If final approval is granted, Defendant will be required to pay $1,000,000 into a qualified settlement fund within 30 business days. (**Ex. 1**, SA, pg. 16, Sec. 5(a)). The net settlement funds, after the deduction of attorney fees, costs/expenses, and the incentive award to the named Plaintiff, will be distributed on an equal basis to all Class Member households that timely submit Claim Forms. (**Ex. 1**, SA, pg. 16, Sec. 5(a)(iv)). This is not a "claims made" settlement, meaning that the benefits to the Class will remain the same irrespective of the number of Class Members who opt to submit a claim following proper notice. The settlement also gives Defendant no "reversionary" interests in the Settlement Payment, meaning that Defendant's obligations to make the $1 million payment or perform the Improvement Measures remain the same irrespective of the claims rate. (**Ex. 2**, ¶54).

Before the final fairness hearing, Class Counsel will submit a request for attorneys' fees not to exceed one-third (1/3) of the Total Settlement Value, in

addition to reimbursement of costs and fees. (**Ex. 1**, SA, pg. 15-16, Sec. 5(a)(i)-(ii)). Plaintiff may also petition the Court for an incentive award of up to $2,500 to Plaintiff Howard Eigenberg for his efforts on behalf of the Class. (***Id.***) These provisions are clearly indicated on the Class Notice, and the Class will be invited to make any objections to the terms of the Settlement.

### LEGAL STANDARD

At the preliminary approval stage, the Court's role is to determine "whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Under Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

The Ninth Circuit has "repeatedly noted that 'there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021). Courts examining a proposed settlement as "fair, reasonable, and adequate" under Rule 23(e)(2) are guided by eight independent factors as delineated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). The Court's assessment of the *Hanlon* factors will naturally vary from

ARIAS SANGUINETTI WANG & TEAM LLP

Page 11

case to case, but courts generally consider: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prod.'s Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

These non-exhaustive *Hanlon* factors are to be assigned a "relative degree of importance" based upon "by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004).

## ARGUMENT

I. **The Settlement Is Entitled to a Presumption of Fairness Because It Resulted from Adversarial Litigation and Negotiation by Experienced Counsel.**

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Class settlements reached as a product

ARIAS SANGUINETTI WANG & TEAM LLP

of informed, arms-length negotiations through mediation are generally "entitled to a presumption of fairness." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (listing citations).

Here, the Settlement Agreement was reached after significant adversarial litigation, including dispositive motion practice, exchange of written discovery requests, exchange of documents, disclosure of expert reports by Defendant, and mediation. The Parties briefed the merits of the case and class certification issues before mediation and exchanged arguments advocating for their respective positions through the negotiation process before an experienced neutral mediator. (**Ex. 2**, ¶37). Further, counsel for both parties have litigated similar cases against one another in the past that allowed both parties to be fully informed at a relatively early stage of the case regarding the value, risks, and likely outcomes of the case. (**Ex. 2**, ¶38).

Further, the Settlement bears none of the hallmarks of potential collusion, such as (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee "separate and apart from class funds"; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant,

ARIAS SANGUINETTI WANG & TEAM LLP

"rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. Here, the Settlement is not contingent upon any award of attorneys' fees, there is no "clear sailing arrangement," and there is no "kicker" or reversion clause. Accordingly, the Settlement is presumptively fair under the circumstances.

## II.      The *Hanlon* Factors Weigh Overwhelmingly in Favor of Settlement.

Courts apply a variety of factors, sometimes known as *Hanlon*, *Churchill*, or *Staton* factors to assess the fairness, reasonableness, and adequacy of the settlement on behalf of the prospective class. For the following reasons, the Settlement is fair, reasonable, and adequate and warrants preliminary approval.

### A.      The Strength of Plaintiff's Case Counsels in Favor of Settlement.

"In assessing the strength of a plaintiff's case, there is no particular formula by which the outcome must be tested." *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015)). "Rather, the court's assessment of the likelihood of success is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citations and marks omitted). Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Generally, where "ultimate success at trial is far from certain, this factor weighs strongly in favor of the settlement." *In re Linkedin User Priv. Litig.*, 309 F.R.D. at 587.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARIAS SANGUINETTI WANG & TEAM LLP

Here, Plaintiff alleges property damages only resulting from an alleged odor nuisance on behalf of a class comprised of more than 5,000 households. There is significant threshold evidence that Defendant's landfill experienced odor control deficiencies that made it susceptible to causing off-site odors, including multiple NOVs issued by the SCAQMD, confirmed instances of excess sulfur emissions, and a significant increase in landfill gas and leachate volumes between April 2018 and March 2023. (**Ex. 2**, ¶41). Further, there is significant evidence regarding off-site odor impacts in the community, including more than 100 odor complaints by neighboring residents and dozens of reports of odor experiences that were reported to Plaintiff's Counsel. (***Id.***)

However, there was yet little evidence regarding how, where, when or at what intensity Defendant's odors travelled. Establishing such facts would have been a costly endeavor that would have inevitably led to a "battle of the experts, the outcome of which is in no way guaranteed." *In re Linkedin User Priv. Litig.*, 309 F.R.D. at 587 (holding that similar uncertainties supported settlement approval).

Further, Defendant had obtained statements from more than a dozen class members reporting that they did not experience odors, or that they were not sufficiently strong to upset the comfortable use and enjoyment of their homes. Establishing and proving commonality of issues remained an open question, and the risks associated with obtaining class certification remained significant.

Although Class Counsel has prevailed on many occasions on the issue of class certification, there have similarly been defeats that Defendant most certainly would have used to argue not only that this case is not appropriate for certification, but that any odor nuisance claim must be handled on an individual basis. While Plaintiff obviously disagrees, there remains significant uncertainty as to the likelihood of success at class certification, the issue of liability, and on the issue of damages, that rendered this Settlement on these terms an outstanding result for the Class based on the evidence and the increasing scrutiny placed upon class actions.

While Plaintiff believes that there is substantial evidence supporting class certification, liability, and damages, the uncertain outcomes at any stage of the litigation counsels in favor of settlement on the agreed-upon terms. *See Bayat v. Bank of the W.*, 2015 WL 1744342, at *3 (N.D.Cal. Apr. 15, 2015) ("Because the strength of Plaintiffs' claims is in doubt, the first *Churchill* factor tips in favor of final approval of the settlement.").

**B.      The Risk, Expense, Complexity, and Likely Duration of Protracted and Complex Litigation Supports Settlement.**

"Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D.Cal. June 27, 2014). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class,

especially when compared to risky and costly continued litigation." *In re Linkedin*
*User Priv. Litig.*, 309 F.R.D. at 587 (citation omitted).

Litigating air pollution class actions is inherently costly and time-consuming
given the involvement of highly specialized experts and the necessity for extensive
documentary and testimonial evidence. (**Ex. 2**, ¶48). The class certification stage
alone typically lasts for a period of years and involves costs, particularly expert costs,
that are typically in the high five to low six figures. Litigating beyond the class
certification stage would necessarily involve additional voluminous discovery and
likely hundreds of thousands of dollars' worth of additional expert testimony. Such
litigation could proceed for several years through trial and possibly appeal.

Even if Plaintiff were able to prove that significant odors were emitted from
Defendant's Landfill, Plaintiff would still need to prove that those odors were
transported to the properties throughout the Class Area at nuisance levels. (**Ex. 2**,
¶48). This would likely result in competing scientific testimony of sufficient
complexity that the ultimate outcome would be anything but certain. (*Id*.) While
Plaintiff is confident that he would have made a strong case, the sheer number of
variables in substantiating claims on behalf of the proposed Class makes winning
and sustaining a judgment a risky, costly, and uncertain proposition.

Further, Plaintiff would have had to establish damages, both individually and
on a class basis. In addition to being costly and time consuming, Defendant could

and likely would have challenged Plaintiff's damages and/or the damages alleged on behalf of the Class. (**Ex. 2**, ¶49). There are any number of hurdles that have a very serious chance that no recovery at all would be obtained if the case proceeded through class certification, appeal, merits discovery, expert discovery, trial, and proof of damages. (***Id.***) Proving classwide loss of value damages would be an exceptionally costly endeavor with entirely uncertain results given the length of time the Landfill has been in operation. Increased litigation costs stand to detract from the overall class recovery, in addition to making the prospect of settlement more difficult. In view of the risks, costs, and duration of litigation, the monetary relief here is well beyond adequate for purposes of preliminary approval. (*Id.*).

### C.  The Risk of Maintaining a Class Action through Trial is High.

Obtaining class certification over Defendant's steadfast objections is anything but certain. If class certification were denied, the practical effect for the majority of the class would be to receive no relief at all, monetary or non-monetary, and the non-monetary relief would be unlikely without a certified class. (**Ex. 2**, ¶46). Even if class certification were obtained, Defendant would have an immediate right to interlocutory appeal. Even if successful on appeal, a decertification effort would be inevitable and likely last all the way up until trial, risking further costs, delay, and potential for destroying and/or splintering the Class. This Settlement avoids those risks, costs, and delays, which weighs overwhelmingly in favor of Settlement on

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

ARIAS SANGUINETTI WANG & TEAM LLP

these outstanding terms. (*Id.*)

### D.   The Amount Offered in Settlement Is Fair.

"The fourth *Churchill* factor is generally considered the most important." *In re Linkedin User Priv. Litig.*, 309 F.R.D. at 587 (quotation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. at 527. In cases where monetary damages are not readily susceptible to simple calculation, courts generally consider whether "that the amount of the agreed-upon settlement fund compares favorably to that of other similar class actions." *In re Linkedin User Priv. Litig.*, 309 F.R.D. at 588.

The $1,000,000 monetary fund in this case compares very favorably on a per-household basis to other California cases involving nuisance claims for past property damages. (*See Wade v. Campbell* (1962) 200 Cal. App. 2d 54, 56, 19 Cal. Rptr. 173, 174 (awarding verdicts of $300-$850 per household to nuisance claimants); *see Qualls v. Smyth* (1957) 148 Cal. App. 2d 635, 638, 307 P.2d 29, 31 (awarding $250-$500 for nuisance caused by offensive dust and odor)). Damages for inconvenience and discomfort and associated loss of use and enjoyment of property are not readily calculable and are generally left to the discretion of a jury. Case law confirms that such damage awards can range from nominal amounts to several hundred or

<div style="text-align:center">ARIAS SANGUINETTI WANG & TEAM LLP</div>

thousand dollars per household. Depending on the number of claims that are submitted, which cannot be known until after notice, Class Members are likely to receive hundreds to thousands of dollars per household, which is well within the range of possible outcomes at trial, especially considering the significant risk of a no cause verdict, or a finding of liability without damages.

This $1.69 million Settlement Agreement also compares very favorably to other settlements in other odor nuisance class actions. For example, the following similar settlements were approved by courts in multiple jurisdictions: *Hamilton v. 3D Idapro Solutions, LLC*, Case No. 18-cv-54-jdp (W.D. Wis.) (final approval of $725,000 settlement with no facility improvements); *Keech and Newfield v. Sanimax USA, LLC*, Case No. 18-cv-683 (D. Minn.) (final approval of $750,000 settlement with no facility improvements); *Alley v. Western Sugar Cooperative*, Case No. 2017-cv-30078 (Col., Morgan Cnty. Dist. Ct.) (final approval of $950,000 settlement with no facility improvements); *Plass, et al v. Sanimax USA, LLC*, Case No. 2015-cv-000165 (Wis., Brown Cnty. Cir. Ct.) (final approval of $915,000 settlement with no facility improvements); *Fuehrer v. Nestle Purina Petcare Co.*, Case No. 5:20-cv-03910 (E.D. Pa.) (final approval of $800,000 settlement with no facility improvements); *Martin, et al. v. Keller Canyon Landfill Co.*, Case No. C20-00610 (Cal. Super. Ct., Contra Costa Cnty., Sept. 16, 2022) (final approval of $550,000 settlement, with improvement measures valued at $1,150,000). (**Ex. 2**, ¶59). This

Settlement for $1,000,000 in cash and $690,000 in Improvement Measures represents an excellent result for the Class in terms of both categories of relief sought in the case.

### E.    Plaintiff's Extensive Pre-Suit Investigation and Discovery Efforts Were More than Adequate to Inform Experienced Counsel Prior to Mediation and Settlement.

"In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.1998)). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.*

As described above, Class Counsel thoroughly investigated Plaintiff's claims prior to litigation, during discovery, and in advance of mediation. This was not a quick flip class settlement. The Parties were equipped with more than enough information to evaluate the likelihood of success at various phases of the litigation, in addition to the value of the claims. Further, this is not Class Counsel's first rodeo, and this is not the first case that has been litigated against Defendant Waste Management or Defendant's Counsel.

Class Counsel had sufficient information to make an informed decision regarding Settlement prior to class certification proceedings.

ARIAS SANGUINETTI WANG & TEAM LLP

F.     **The Experienced Views of Class Counsel Resoundingly Support Settlement on the Agreed-Upon Terms.**

Class Counsel has significant, perhaps unparalleled, experience in litigating noxious odor air pollution cases. Counsel is one of the few, if not only, plaintiffs' firms in the country that devotes a substantial portion of its practice to litigating class claims of this niche type. (**Ex. 2**, ¶11). Accordingly, Class Counsel has represented many dozens of certified classes as class counsel and has administered many dozens of similar settlements. (*Id*.)

Class Counsel's extensive experience provided a uniquely strong foundation for evaluating the Settlement in light of the possible outcomes of continued litigation that allowed for this outstanding settlement to be reached without incurring significant costs that would detract from the Class's ultimate recovery. Based on Class Counsel's extensive experience, and in light of all the factual and legal circumstances involved, Class Counsel strongly recommends this Settlement as being an outstanding result that is in the best interests of the Settlement Class. (**Ex. 2**, ¶55).

III.     **Class Certification Is Unopposed and Appropriate for Settlement Purposes.**

Plaintiff moves this Court to conditionally certify a class for settlement purposes pursuant to Rule 23. Fed R. Civ. P. 23. To satisfy Fed. R. Civ. P. 23(a), a plaintiff must demonstrate that "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

### A.    The Settlement Class is Sufficiently Numerous.

"The numerosity requirement is not tied to any fixed numerical threshold—it 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id*. (affirming certification of a class of 20 members). Here, the Class is comprised of more than 5,000 households. Numerosity is easily satisfied.

### B.    The Settlement Class Shares Overwhelmingly Common Questions of Law and Fact.

"The requirements of Rule 23(a)(2) have been construed permissively[.]" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citations and marks omitted). "Plaintiffs need not show … that every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality

Page 23

ARIAS SANGUINETTI WANG & TEAM LLP

requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). Commonality "may be met where ... the claims of every class member are based on a common legal theory, even though the factual circumstances differ for each member." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (emphasis added).

Plaintiff's claims, and those of the Class, arise from overwhelmingly common legal and factual questions at the heart of the case involving Defendant's alleged failure to adequately control the Landfill's emissions. (*See* Doc. 1, ¶43). Proof of Plaintiff's claims also involve a common nucleus of operative facts and evidence that give rise to functionally identical claims, alleging common emission problems from a common source. (*See* Doc. 1, ¶29). Commonality is satisfied.

### C.    The Claims of the named Plaintiff are Typical of the Class's Claims.

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 598 (C.D. Cal. 2009) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Courts in the Ninth Circuit "do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff brings common claims for negligence and public and private nuisance from airborne common source emissions from Defendant's landfill. Defendant's common course of conduct has similarly impacted residents throughout Corona, and the injuries alleged by Plaintiff Howard Eigenberg are sufficiently aligned with the injuries reported by the Class—invasions of odors into private property.

Plaintiff's counsel is highly experienced in this unique field of law, and claims of nuisance and negligence are the best legal theories available based on the facts presented. (**Ex. 2**, ¶40). Plaintiff's claims share a common cause with other class members and seek common relief for singularly common conduct by Defendant. Thus, typicality is satisfied.

### D.    The Named Plaintiff and Class Counsel will Continue to Fairly and Adequately Protect the Class's Interests.

"In the Ninth Circuit, to test the adequacy of a class representative, a court must answer two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Grace v. Apple, Inc.*, 328 F.R.D. 320, 334 (N.D. Cal. 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

Plaintiff's Counsel has unparalleled experience in class litigation of this kind, involving widespread industrial emissions. Liddle Sheets P.C. has successfully

Page 25

ARIAS SANGUINETTI WANG & TEAM LLP

litigated numerous similar class actions involving noxious air pollution in jurisdictions across the United States for more than 25 years. (**Ex. 2**, ¶7-12). The named Plaintiff has fully participated in this litigation and there is no evidence of any conflicts of interest that may undermine his ability to vigorously represent the Class. The adequacy element is easily satisfied.

### E.    Common Questions of Law and Fact Predominate over Any Questions Affecting Only Individual Members.

To satisfy Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997).

For settlement purposes, there is little practical need to determine whether individual questions will predominate the litigation because the proposal is to cease litigating these issues. However, courts have frequently found that common issues predominate in similar cases. For example, in *O'Connor*, the Central District of California held in an air pollution case that the "method of proof will involve answering questions that will not differ with each class members' claims, such as

ARIAS SANGUINETTI WANG & TEAM LLP

what contaminants did Defendants release and how much was released, the pathways of release, and what areas have been exposed to toxins, as well as the common questions relating to Defendants' liability[.]" *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 340–41 (C.D. Cal. 1998). "'[I]t would serve no purpose to force multiple trials to hear the same evidence and decide the same issues'" *Id.* (quoting *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 389 (D. Colo. 1993) (listing common issues and certifying air pollution class action alleging property damages). Here, the issues are sufficiently common to the Class to certify a settlement class. The applicable standard of care, whether Defendant's conduct was intentional or negligent, whether Defendant's gas collection and pollution abatement including leachate treatments, and whether the Class was commonly exposed to odor from the landfill, *inter alia*, are all overwhelmingly common questions that will involve identical evidence to prove for each class member. As in *O'Connor* and *Cook*, "it would serve no purpose to force multiple trials to hear the same evidence and decide the same issues" *O'Connor*, 184 F.R.D. at 340–41; *Cook*, 151 F.R.D. at 389.

Further, the Parties agree that a class settlement process is superior to protracted, costly, and risky litigation. The predominance/superiority elements are satisfied for settlement purposes, ensuring efficiency, protecting judicial economy, and ensuring that all affected residents in the Class are afforded adequate representation and the opportunity for meaningful relief.

**IV.        The Notice Plan Set Forth in the Settlement Agreement is Appropriate**

As required by Fed. R. Civ. P. 23(e)(1)(B), a court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal…" and determine whether the notice is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Settlement Agreement calls for the proposed long-form notice (**Ex. (1)(D)**) to be sent via first class U.S. Mail to all reasonably obtainable addresses within the Class Area. Class Counsel will obtain the Class Area mailing list through Data Axle, a qualified third-party data source for obtaining such information. (**Ex. 2**, ¶24). Data Axle has been utilized as a vendor in many prior class action cases with similar notice programs, and it has time and again proven itself to be a reliable source for such information. (***Id.***) The Notice will be mailed, along with a copy of the claim form, via direct mail within 28 days of the Court's preliminary approval order.

Additionally, the proposed publication notice will be published in a newspaper of general circulation in the Class Area within 28 days of the Court's preliminary approval order. Class Counsel will establish a Settlement Website prominently advertised on both the longform and publication notice.

The proposed notice program clearly informs Class Members, in plain, easy to understand language, about their rights to make claims, opt-out, or object to the

ARIAS SANGUINETTI WANG & TEAM LLP

Settlement, including all the pertinent deadlines for doing so. Direct mail notice is the hallmark of adequate notice under Rule 23 and the U.S. Constitution in class cases. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175, 94 S. Ct. 2140, 2151 (1974).

The Notice contains contact information for Class Counsel to directly answer questions. The website to be maintained by Class Counsel has links to relevant Settlement documents, including the Complaint, Settlement Agreement, Claim Form, and the Preliminary Approval Order. The Notice provides information regarding the amount of attorneys' fees that may be sought, in addition to instructions to access the case docket via Pacer, and the date and time of the final approval hearing.

Accordingly, the proposed notice program is adequate, fully informs Class Members of their rights, and complies with Rule 23 and due process requirements.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant his unopposed Motion for Preliminary Approval of the Class Action Settlement.

Dated:    October 10, 2025        **LIDDLE SHEETS P.C.**

                         By:    */s/ Matthew Z. Robb, Esq.*
                                STEVEN D. LIDDLE
                                LAURA L. SHEETS
                                MATTHEW Z. ROBB

Page 29

ARIAS SANGUINETTI WANG & TEAM LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIAS SANGUINETTI WANG
& TEAM LLP**

MIKE ARIAS
ARNOLD C. WANG
M. ANTHONY JENKINS

*Attorneys for Plaintiffs and the Putative
Class*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

**ARIAS SANGUINETTI WANG & TEAM LLP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,757 words, which complies with the word limit of L.R. 11-6.1.


Dated:    October 10, 2025                **LIDDLE SHEETS P.C.**

                           By:    */s/ Matthew Z. Robb, Esq.*
                                     MATTHEW Z. ROBB

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I electronically served this motion, memorandum of points and authorities, and all exhibits attached hereto on all Counsel of record and the Court via electronic mail and by filing it through the Court's CM/ECF system, which will provide notice to all counsel of record.

Dated:    October 10, 2025          **LIDDLE SHEETS P.C.**

By:     */s/ Matthew Z. Robb, Esq.*
          MATTHEW Z. ROBB

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

ARIAS SANGUINETTI WANG & TEAM LLP